Isaac **WILLIAMS**, Jr., Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–12352.

Criminal Court of Appeals of Oklahoma.

Nov. 14, 1956.

Caesar C. Latimer, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

This is an appeal from the district court of Tulsa County where defendant was charged in five separate cases with second degree burglary, second and subsequent offense, being cases Nos. 16,451, 16,469, 16,481, 16,482 and 16,483. The cases were consolidated for appeal. Each charge involved breaking into a locked automobile, and looting it of personal property. The defendant entered a plea of guilty in each case, and was by the court sentenced in each case to serve twenty years at hard labor in the State Penitentiary at McAlester, but providing that the sentences should run concurrently. The court assessed near the minimum punishment, as by statute the penalty could have been from ten years as a minimum in each case, but sentences not to run concurrently, or a total of fifty years as a minimum, and the statute provides for no limitation on the number of years the court might have assessed. See 2 O.S.1951, §§ 1436 subd. 2, and 51 subd. 1. The record on appeal has been at the expense of the State.

We have not been favored by a brief in behalf of the defendant, and ordinarily do not treat the propositions raised in detail, but only examine the record for fundamental error, and if none found affirm the case. Feddis v. State, 96 Okl. Cr. 24, 248 P.2d 265; Standridge v. State, 96 Okl.Cr. 74, 248 P.2d 249; Stout v. State, 96 Okl.Cr. 88, 248 P.2d 1059. We have carefully examined the petition in error and the casemade or record of the proceedings in each of the cases involved in the appeal. The gist of the complaint of error is set out in propositions three to six of the petition in error, as follows:

"3) That the plaintiff in error was denied his constitutional rights in that he was fraudulently deprived of his constitutional right to a jury trial in violation of the United States Constitution and the statutes and constitution for the State of Oklahoma.

"4) That the Court abused its discretion based upon the evidence in the record in refusing the defendant to withdraw a former plea of guilty and enter a plea of not guilty and to grant the defendant a new trial, and a trial by jury, in all of the criminal cases.

"5) That the court erred in its finding of facts based upon the evidence in the record in making a determination that a voluntary plea of guilty had been entered by the defendant in open court.

"6) That the verdict is not sustained by sufficient evidence or is contrary to law."

The record discloses that at the time defendant entered his plea of guilty he was represented by attorney Amos Hall, Tulsa, and that he withdrew pleas of not guilty theretofore entered, which automatically remove the case from the immediate December trial docket. The record shows:

(1) Case No. 16451, journal entry of November 30, 1955 shows withdrawal of plea of not guilty (and where trial had been set for December 6, 1955) and entry of plea of guilty, with sentence day fixed for December 6, 1955.

(2) Case No. 16469, journal entry to same effect.

(3)  Case No. 16481, journal entry to same effect.

(4)  Case No. 16482, journal entry to same effect.

(5)  Case No. 16483, journal entry to same effect.

The record further reflects that on February 3, 1956 defendant was before the court for the purpose of being sentenced in the five cases where he had theretofore entered a plea of guilty. He was represented by a new attorney Caesar Latimer, who sought to have the pleas of guilty withdrawn and who wanted jury trials. The following transpired:

"The Court: As I understand it, heretofore there has been a plea of guilty in this case and the matter has been deferred for sentence until this date, is that correct?

"Mr. Latimer: Comes now Caesar C. Latimer, representing the defendant Isaac Williams who is charged on five counts of burglary and shows the court that this defendant at one time was represented by the law firm of Amos T. Hall and O. B. Graham, that subsequent thereto he was supposed to have been represented by public defender Gordon Patton. This defendant denies that he was represented by Gordon Patton, his preliminary was waived on two charges in Common Pleas Court. He makes the statement that it was against his desire and without his consent. Two charges were filed against him by the grand jury and he waived preliminary on three charges that were filed in the Common Pleas Court. This defendant was bound over to the district court and at which time he was arraigned before the District Judge and asked for a jury trial. Upon the following jury docket this defendant, upon advice of counsel, was supposed to have waived his right to a jury trial.

"The defendant states that the waiving of his right to a jury trial was against his wishes and without his consent. After the waiving of his right to a jury trial, his trial was set down before the Judge to be heard without a jury, at which time his attorneys entered a plea of guilty and it was at this particular time that this defendant states that the plea of guilty was without his consent and that he stopped the attorney from entering the plea and asked the Court's permission to allow him to talk to the County Attorney.

"Because of this commotion that took place upon this entering of a plea of guilty to five counts of burglary the Court allowed this defendant to confer with the County Attorney's office. This defendant also states that from the time these charges were filed, up until the day a plea of guilty was entered, against his desire and without his consent, he does not feel as though he was fairly represented by counsel.

"This defendant hereby requests and asks this court that due to the fact, because of the lawyers employed on his behalf and not being able to defend him properly that his constitutional rights have been violated. This defendant objects to the Court imposing sentence on him at this time because of his constitutional rights to a fair and impartial trial, have been violated and requests that he be set back on the jury docket, that his trial be set down and the burglary charges filed against him be heard by a jury."

The county attorney, J. Howard Edmondson, advised the court that his records showed that on November 30, 1955, all five cases involving defendant were called for trial, that defendant appeared in person and by counsel; pleas of guilty were entered, and following this he turned to assistant county attorney Simms and asked Mr. Simms what he was going to recommend by way of sentence, and Mr. Simms advised him a total of twenty years; that

is, twenty years on each charge, and at that time defendant asked the court if he might have opportunity to privately confer with the county attorney or some one in his office. The court then asked assistant county attorney Simms if he wanted to talk with the defendant, and Mr. Simms agreed to do so, if the court wanted him to, so that the case was passed until 1:30 P.M. Mr. Simms then talked with the defendant in jail, and defendant advised Mr. Simms that he knew some things about some other people, negro people, that he thought Mr. Simms ought to know. Said the county attorney:

"Following that time, he gave our office a statement, wherein he set out the basic facts which were the basis of the charge of extortion against his attorney, * * *, and one John Smitherton. Of course, the Court is familiar with the fact that charge was filed and the case tried in the Common Pleas Court and a demurrer was filed to the evidence and the Judge, Judge Lisle, sustained a demurrer on the ground that he didn't believe the testimony of the witnesses for the State.

"I think the Court should also be informed of the fact that this defendant gave the county attorney's office a detailed statement advising us that he had burned the Negro Masonic Temple building at Boley, and that he was paid to do that by the three Negro citizens of Tulsa. They were involved in the conspiracy and set out in detail all of the facts and circumstances surrounding that.

"Following the presentation of this statement to us we turned it over to the State Fire Marshal in Oklahoma City and he has made an investigation that has taken him two months to make and the evidence corroborates this defendant's admission of the arson, and also in particular corroborates his testimony with reference to one of the three people being involved with

him in it. That that party is now deceased; that there is other evidence concerning the other two parties but that at this time that investigation is not complete.

"Mr. Patton went to the county jail on December 23, 1955, and took a detailed statement from Isaac Williams in which Isaac Williams told Mr. Patton he wanted him to represent him. That that statement was reduced to writing by one Verna DeArmond, one of the court reporters in the court of common pleas, and in that statement he said in substance the same thing to the county attorney's office.

"That is just about all we know about this case, in general, without going into detail. I think this about it [sic] and I feel very sincerely about it, that a great number of the things that this defendant has said in these cases implicated his own attorney and in view of that fact and in view of the fact that each of these five charges carries a minimum of ten years, inasmuch as I filed second and subsequent offenses that some question arises in my mind as to the advisability of giving him his day in court.

"Now, I advised the court this morning that if he were to be sentenced this afternoon, I would recommend twenty years and advised the court further that in view of the confession to two other crimes since that time, the court would be justified in giving him an even greater sentence."

The record disclosed that a recess followed, and defendant and his counsel went to the county attorney's office insisting that by reason of the fact that defendant disclosed other crimes of other people to the county attorney, as well as two others in which he was involved, that he should receive a lighter sentence.

After much argument by counsel for the defendant and for the State, the court observed:

"The Court: Here is a man charged with five separate offenses of burglary in the second degree, second offense. It seems to me the recommendation made was a very reasonable recommendation on those kind of charges. I know when a defendant gets into court often times he doesn't want to go to trial and often times, he wants to do everything he can and seeks to do everything he can to ease his case and that's but natural and I guess any person charged with a crime would want to do the same thing, but here are five cases and I don't know what happened to the witnesses in these cases or what might be, but if defendants can evade trial by coming into court and finding out the punishment they are going to receive, and that they are going to receive a little more than they thought upon their plea of guilty and find out what the punishment is that it might be a little bit more than they thought and the case is continued from time to time, it seems to me that the interest of the State and the citizens of the State just as well as that of the individual defendant should be considered. He didn't have to plead guilty, even though his attorney advised him to plead guilty. He could have gone to trial, but five cases, five separate cases, and he having served time in the penitentiary before, he knew his rights pretty well, he wasn't a man that had never been in court before. I think there has to be an end to these things. Sometimes you just can't come into court from time to time and withdraw your plea. I believe a jury was waived in all these cases. I don't know whether they were waived in all of them before me, or not."

Following this, the defendant testified at some length. He was positive that no one from the county attorney's office had promised him anything to cause him to change his plea to that of guilty, but blamed everything on his former attorney. He said that preliminary hearings were had in three of the cases and that he was represented by O. B. Graham. Said he:

"I wanted to fight the case and Mr. Graham told me, took me back in the little room off of the courtroom and he said, 'Look here, we ought to pass these cases and get them all up there with the other two the grand jury indicted you on', and he told me that he could handle some fellow in the county attorney's office * * *."

Defendant said that when he was arraigned in the district court his attorney told him to waive a jury. Defendant further testified as to the waiving of a jury in the cases:

"A. I was going along with him [his attorney's advice] because I figured he knew what to do."

He was asked:

"I will ask you this, do you feel as though you have been fairly represented? A. No. * * *"

He further said that he felt that he could have beaten some of the charges. He was asked:

"At that time, on November 30th, when this plea of guilty was entered for you, did you enter that plea yourself? A. I didn't say it out of my mouth.

"Q. Had they talked to you about it? A. When he came up there he said, 'I can get you off with twenty years.' When I came down here I said, 'You got to do better than that.' And we came on down here the next morning, and I said, 'What was said?' And he said, 'I didn't get a chance to talk to him.' And he said, 'you go ahead and take his plea and twenty years and I will talk him out of five years, and go on down then and I will get you a parole.'"

Defendant went on to say that he had implicated other parties, including his attorneys, in some of his crimes. It was developed that a charge was filed against at least one of his attorneys but that the court had sustained a demurrer to the evidence. Said the Court:

"I understand your situation. I know when a man is charged with a crime he frequently says that he has been framed by the attorneys, by the officers and this and that, but not much reliance can be placed in this kind of testimony."

The court remarked about further delay that was sought, and said:

"I don't want to delay this thing any more. He is guilty of another crime he could be sentenced to a long term in the penitentiary for and he admits that and yet he is up here saying his lawyers framed him. Maybe the officers framed him and maybe somebody else.

"Mr. Latimer: Yes, we agree to that, your Honor, but he is entitled to have his sentence imposed by twelve men.

"The Court: He is not under this record here. He could have had a jury trial and he waived a jury trial. I notice from the record in this case where some of the subpoenaes were dated on November 30th and some of them are out of the State. If we permit a man to escape punishment with a story of this kind, that apparently no one except himself believes, I don't know where we would be in these matters. In other words, we might as well let them all go free if they can come into court from time to time and make these sort of statements and get further delay."

The court then proceeded to impose the sentences in the five consolidated cases.

■ In the case of Crickenberger v. State, 91 Okl.Cr. 38, 215 P.2d 582, 583, this court held:

"Where a defendant appears for trial with counsel of his own choice, jury is impanelled, statement by the court made, and a number of State's witnesses testify and thereafter defendant withdraws his plea of not guilty and enters plea of guilty, thereby causing the jury to be discharged, he can not thereafter complain that he has been denied the right to trial by jury.

"The granting or denying of permission to withdraw a plea of guilty and to substitute a plea of not guilty is a matter within the sound discretion of the trial court, and its action will be upheld unless an abuse of such discretion clearly appears from the record."

See also Wilson v. State, 82 Okl.Cr. 272, 168 P.2d 898; Flowers v. State, 90 Okl. Cr. 390, 214 P.2d 728.

■ From the matters recited, it may be seen that after preliminary hearings in three of the burglary cases defendant's counsel thought it wise to waive preliminary hearings in two of the cases, but a plea of "not guilty" was entered in all five of the cases. However, the cases were about to come on for hearing on the jury docket so counsel prevailed upon defendant to agree to waive jury trials, then when defendant was arraigned in district court on November 30, 1955 his counsel entered a plea of guilty. The county attorney had told him that he would recommend a 20-year sentence in each case, to run concurrently. Of course there was the hazard that the court might not accept the recommendation, but he did. The defendant then implicated himself and others in other crimes, apparently hoping for further delay, which he got, and hoping for a lighter sentence, which he did not get. The sentence imposed was very light in view of the number of crimes and the habitual criminal statute.

We find no abuse of discretion on the part of the court in refusing to set aside

the plea of guilty entered in the five cases appealed from. The judgments and sentences appealed from are, therefore, affirmed.

JONES, P. J., and BRETT, J., concur.